**LEVER BROTHERS COMPANY,**
**Plaintiff,**

v.

**THE PROCTER & GAMBLE COMPANY, Defendant.**

**No. 3:98–CV–955 (GLG).**

United States District Court,
D. Connecticut.

Oct. 13, 1998.

John C. Yavis, Jr., Michael J. Donnelly, Murtha, Cullina, Richter and Pinney, LLP, Hartford, CT, Stephen B. Judlowe, Hopgood, Calimafde, Kalil & Judlowe, LLP, New York City, for plaintiff.

Mark R. Kravitz, Wiggin & Dana, New Haven, CT, John L. Strauch, Kenneth R. Adamo, Jones, Day, Reavis & Pogue, Cleveland, OH, for defendant.

*MEMORANDUM DECISION*

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant The Procter & Gamble Company ("P & G") moves to dismiss this declaratory judgment action. Alternatively, pursuant to 28 U.S.C. § 1404(a), P & G requests this Court to transfer venue of this action to the U.S. District Court for the Southern District of Ohio. For the following reasons, we GRANT P & G's motion to transfer and we DENY as moot P & G's alternative motion to dismiss (Document # 7).

*BACKGROUND*

Plaintiff Lever Brothers Company ("Lever") competes with P & G in the manufacturer and sale of concentrated laundry detergents and fabric softeners for household use. The Lever Brothers division of Conop-

co, Inc., which is a subsidiary of Unilever United States, Inc. ("Unilever"), is a New York corporation with its corporate offices in Greenwich, Connecticut. Unilever is a foreign corporation with its headquarters in New York, New York. P & G is an Ohio corporation with its headquarters and principal place of business in Cincinnati, Ohio. Both Lever and P & G do business on a nationwide basis.

There are three related patents, all assigned to P & G, relevant to deciding this motion. First, U.S. Patent No. 4,515,705 was issued to Robert W. Moeddel ("Moeddel" patent) and relates to liquid and powdered laundry detergents that combine non-odorous enzymes with select perfumes to improve the odor of laundry detergents. Second, U.S. Patent No. 4,490,271 was issued to Gianfranco L. Spadini *et al,* ("Spadini" patent) and relates to laundry detergents with a particular chemical combination to remove clay soils from clothes. Third, U.S. Patent No. 4,439,-335 was issued to Michael E. Burns ("Burns" patent) and relates to fabric softeners.

Lever commenced this action on May 21, 1998 pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to declare that (1) the Moeddel patent is unenforceable and invalid, and (2) the Spadini patent is unenforceable, invalid, and not infringed. Simultaneous with the filing in this Court, Lever also brought actions at law in the District of New Jersey and the Northern District of Georgia for infringement of some of its laundry detergent-related patents. Subsequently, on June 2, 1998, P & G filed an action at law against Lever in the Southern District of Ohio for infringement of its Moeddel and Spadini patents, and for infringement of another related patent, the Burns patent, which is not at issue here. The Ohio action was assigned to Judge Herman Weber. On June 22, 1998 in the Ohio action, Lever filed a motion to transfer venue to Connecticut. That motion is still pending. Then, on June 29, 1998, P & G filed the instant motion to transfer this action to Ohio. This Court heard oral arguments on P & G's motion to transfer on October 1, 1998.

## DISCUSSION

■ Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party requesting a transfer of venue bears the burden of proof. *O'Brien v. Okemo, Mountain, Inc.*, No. 3:97–cv–0009, 1998 WL 514692, at *4 (D.Conn. July 21, 1998). Among the factors a district court may consider in deciding a motion to transfer are the convenience of the parties and the witnesses, the location of the documentary evidence, the plaintiff's choice of forum, the availability of process for unwilling witnesses, and the interests of justice. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *O'Brien*, 1998 WL 514692, at *5; *Aetna Life and Cas. Co. v. Christie*, No. 3:96–cv–1654, 1997 WL 280520, at *2 (D.Conn. May 21, 1997) (citation omitted); *Dataline Corp. v. Unirock Management Corp.*, No. 3:96–cv–1974, 1997 WL 205794, at *4 (D.Conn. Apr.11, 1997) (citation omitted); *Mednet, MPC Corp. v. Spectera, Inc.*, No. 3:95–cv–2723, 1997 WL 205764, at *3 (D.Conn. Mar.11, 1997) (citation omitted).

■ Both parties agree that venue is proper both in Connecticut and in Ohio due to the nationwide nature of each party's business. Also, in the interests of judicial economy, both parties agree that only one of the actions should go forward because the two actions are substantially similar and neither action has progressed significantly. At oral arguments, the parties indicated that Judge Weber had not yet ruled on Lever's motion to transfer the Ohio case to Connecticut because the motion has not been fully briefed. Thus, the only issue is whether P & G has sustained its burden of proving that venue is more appropriate in Ohio than in Connecticut.

P & G contends that Ohio is the more convenient forum for the parties, the material witnesses, and the production of documents. P & G states that it is an Ohio corporation with its corporate headquarters in Ohio. P & G also claims that because Lever challenged the validity and enforceability of the Spadini and Moeddel patents, the material witnesses would be the inventors and those who prosecuted the patents. P & G asserts that these witnesses are Ohio residents, and therefore are not subject to this Court's subpoena power. Moreover, P & G contends that most of the documents on the validity and enforceability of the patents are located in Ohio. P & G further argues that Ohio is the situs of the relevant events because the inventions were developed, made, and tested in Ohio. Additionally, the Spadini and Moeddel patents were filed and prosecuted in Ohio. Finally, P & G claims that considerations of efficiency and the interests of justice favor Ohio because the Ohio action involves the Burns patent, which is a patent related to the Spadini and Moeddel patents but which is not at issue here.

Conversely, Lever argues that this case should not be transferred to Ohio because significant weight should be given to the plaintiff's choice of forum. As a corollary, Lever relies heavily on the fact that it filed this lawsuit before P & G filed in Ohio. Additionally, Lever argues that this case should remain in Connecticut for reasons of convenience because the alleged infringement occurred in Connecticut. Thus, according to Lever, Connecticut is the situs of Lever's technology, the evidence of infringement, and proof of damages.

After considering the motion papers and the evidence presented to this Court at oral argument on October 1, 1998, we find that P & G has sustained its burden of proving that we should transfer venue to the Southern District of Ohio. First, the location of the relevant documents, the sources of proof, and the operative facts support a transfer. *See Mednet*, 1997 WL 205764, at *3. To determine whether these factors favor Connecticut or Ohio, we consider the gravamen of Lever's complaint. *Anadigics, Inc. v. Raytheon Co.*, 903 F.Supp. 615, 618 (S.D.N.Y.1995); *see AVEMCO Ins. Co. v. GSF Holding Corp.*, No. 96–cv–8323, 1997 WL 566149, at *6 (S.D.N.Y. Sept.11, 1997) (stating that it is necessary to consider the location from which the plaintiff's claims arise to determine the situs of operative events). The complaint alleges two causes of action involving the validity and enforceability of the Spadini and Moeddel patents. Lever also seeks a decla-

ration that it did not infringe the Spadini patent.

Generally, there is a preference to have a patent infringement case proceed in the forum where the infringement occurred. *Anadigics*, 903 F.Supp. at 618. This case, however, focuses more on issues of the patents' enforceability and validity than it does on infringement. Indeed, in *Anadigics*, upon which Lever relies, the court transferred the patent case to the District of Massachusetts, which was where the infringement occurred, because the infringement claim was a primary aspect of the case. However, another factor supporting transfer was that the alleged infringer raised an affirmative defense of reverse engineering for which the sources of proof were in Massachusetts. The court specifically found that the infringement claim and the affirmative defense were the predominant issues in the case. 903 F.Supp. at 618. Thus, a district court should determine the main issues of a case, and not rely solely on where the infringement occurred.

Moreover, although the infringement may have occurred in Connecticut, this relates only to the Spadini patent because Lever is not requesting a declaration that the Moeddel patent was not infringed. Thus, the evidence on infringement only partially tips in favor of Connecticut. With respect to the enforceability and validity of the Spadini and Moeddel patents, the sources of proof are mostly located in Ohio. Not only were these patents developed, made, and tested in Ohio, but they were also filed and prosecuted in Ohio. *See Recoton Corp. v. Allsop, Inc.*, 999 F.Supp. 574, 577 (S.D.N.Y.1998) (in part, transferring a declaratory judgment action involving patent infringement to the location where most of the patents were prosecuted).

Second, the convenience of the witnesses on the issues of enforceability and validity favors Ohio over Connecticut. *See Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir.1989); *Dataline*, 1997 WL 205794, at *4. P & G argues that the material witnesses would be the inventors and the attorneys listed on the patents who are located in Ohio and are outside this Court's subpoena power. *See* Fed.R.Civ.P. 45(b)(2). Some of these witnesses are no longer employed by P & G, including two of the five inventors and five of the eight attorneys. To support its claim that these witnesses are material, P & G has supplied a list of the potential witnesses and the substance of their expected testimony. Def.'s Mem. dated 6/29/98, Tab 2 (Adamo Declaration) ¶ 5. Due to the preference for having live witnesses testify versus reading deposition testimony into the record or using videotaped deposition testimony, we find that the convenience factors favor Ohio. *See In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F.Supp. 188, 194 (E.D.N.Y.1994).

Third, we do not find that the plaintiff's choice of forum should be given substantial weight. Usually, a district court will defer to the plaintiff's choice of forum unless the balance of conveniences tips decidedly in favor of another forum. *Dataline*, 1997 WL 205794, at *5. As just discussed, we find that the balance of conveniences favors Ohio. Additionally, the home base rule generally applies when a plaintiff files a lawsuit in the forum of its state of incorporation. *S–Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F.Supp. 211, 214 (S.D.N.Y.1995); *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 135 (S.D.N.Y.1994). This is not the situation here. While Lever and Unilever may have corporate offices in Connecticut, neither is a Connecticut corporation. Thus, the weight which would normally be given to Lever's choice of forum is substantially diminished in this case. *See AVEMCO*, 1997 WL 566149, at **6–7.

Fourth, we find that less deference can be given to the first-filed doctrine considering that the balance of conveniences favors Ohio. *See Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991) (citation omitted); *Mednet*, 1997 WL 205764, at *3; *see also Riviera Trading Corp. v. Oakley, Inc.*, 944 F.Supp. 1150, 1158 (S.D.N.Y.1996) (stating that exceptions to the first-filed rule include a defendant's good-faith attempts at settlement, judicial economy, a minimal time difference between the filing of two competing actions, and a lack of progress in either litigation). Additionally, P & G filed the Ohio action only twelve days after Lever commenced this suit and only three days after P & G received service in this case. *See Capitol Records, Inc. v. Optical Recording Corp.*. 810 F.Supp. 1350, 1355

(S.D.N.Y.1992) (transferring a patent case to the forum of the second-filed action which was filed twenty days after the first action). There was also evidence that Lever filed this action in Connecticut to gain a tactical advantage while the parties were engaged in settlement negotiations. *See id.* at 1354.

Fifth, the interests of justice would be better served in Ohio because the Ohio action contains a claim involving the Burns patent which is not at issue here. We are mindful that when applying the first-filed rule there only needs to be "substantial overlap" of the two cases, and not complete identity of issues, to justify retaining a case in the first-filed forum. *See Save Power Ltd. v. Syntek Fin. Corp.* 121 F.3d 947, 950 (5th Cir.1997). Because the issues involving the Burns patent are related to those regarding the Spadini and Moeddel patents, we do find that it would be most efficient to try all these claims together. We note that in Lever's transfer motion filed in the Ohio action, Lever argues that Judge Weber could sever the claims in order to transfer the Spadini and Moeddel claims to this Court and retain the Burns claim in Ohio. Pl.'s Mem. dated 6/22/98, Murphy Decl.Ex. 3, at 16–17 n. 5. Nevertheless, we find that the most complete adjudication of the parties's dispute would be achieved in Ohio, where an action at law is pending which is more comprehensive than this declaratory judgment action.

## CONCLUSION

For the foregoing reasons, we GRANT defendant's motion to transfer venue and we DENY as moot defendant's alternative motion to dismiss (document # 7). Accordingly, the Clerk of the Court is directed to transfer this action to the U.S. District Court for the Southern District of Ohio.

**SO ORDERED.**